# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

BENJAMIN M.,[1]

                                        Plaintiff,

              v.                                          5:18-CV-1079
                                                         (GTS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

JUSTIN M. GOLDSTEIN, ESQ., for Plaintiff
ALEXANDER BROCHE, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT and RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, Chief United States District Court Judge, pursuant to 28

U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with

General Order 18.

## I.    PROCEDURAL HISTORY

      Plaintiff protectively[2] filed concurrent applications for Supplemental Security

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Report and Recommendation will identify the plaintiff using only his first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.*  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Income ("SSI") and Disability Insurance Benefits ("DIB") on January 28, 2015.

(Administrative Transcript ("T.") at 55, 153-60). In his application, plaintiff alleged a

disability onset date of September 25, 2014; however subsequently amended the onset

date to July 10, 2013. (T. 37, 155). Plaintiff's application was initially denied on April

10, 2015, and plaintiff timely requested a hearing before an Administrative Law Judge

("ALJ"). (T. 70-73, 82-83). On February 23, 2017, plaintiff appeared with his non-

attorney representative and testified at a hearing by videoconference before ALJ John

Ramos. (T. 34-54). On June 19, 2017, ALJ Ramos found that plaintiff was not disabled

from July 10, 2013 through the date of the ALJ's decision. (T. 10-17). Plaintiff

requested a review of the ALJ's decision, which the Appeals Council denied on July 13,

2018. (T. 1-3.) ALJ Ramos's opinion thus became the final decision of the

Commissioner.

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months….." 42 U.S.C. § 1382c(a)(3)(A). In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity
> that he is not only unable to do his previous work but  cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless

of whether such work exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or whether he would be hire
if he applied for work

42 U.S.C. § 1382(a)(3)(B). The Commissioner uses a five-step process, set forth in 20

C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI

disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled with-out considering
> vocational factors such as age, education, and work experience…
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

3

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

     "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id. See also Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

     An ALJ is not required to explicitly analyze every piece of conflicting evidence

in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles

v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an

ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the

ALJ cannot "pick and choose evidence in the record that supports his conclusions."

*Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-

CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

### III.   **FACTS**

On the date of his administrative hearing, plaintiff was 26 years old and lived with his parents.  (T. 38, 47).  He was a high-school graduate, with some college experience. (T. 38-39).

Plaintiff most recently worked as a full-time data analyst at Fort Drum.  (T. 39). Plaintiff stopped working at Fort Drum due to his alleged disabilities and medical limitations.  (T. 41).  Previously, plaintiff was employed by NYSARC as a caretaker, where his duties included cleaning, laundry, preparing meals, and providing other physical assistance as needed.  (T. 39-40).  Plaintiff also worked part-time as a sales representative for Gander Mountain.  (T. 40-41).

Plaintiff was diagnosed with asthma as an adult, for which he treated with an inhaler.  (T. 44-45).  Plaintiff testified that "pretty much anything, dust, scents . . ." aggravated his symptoms.  (T. 45).  Despite the recommendations of his doctors, plaintiff smoked up to half a pack of cigarettes a day.  (*Id.*).  There came a time during his employment at Fort Drum when plaintiff contracted bronchitis from a co-worker. (T. 41).  On his way to work, plaintiff began coughing and felt lightheaded, so he pulled over.  (*Id.*).  Plaintiff passed out in his car, and upon waking immediately drove to urgent care.  (*Id.*).  Plaintiff followed up with his primary care doctor, who performed a myriad of tests. (T. 42).  He was further referred to a pulmonologist, who ultimately determined that plaintiff had a "lung infection."  (*Id.*).

Plaintiff also testified to having lupus since he was 16 years old.  (T. 43).  At the time of the hearing he was treating with Plaquenil, along with having follow-up blood

work every three months.  (T. 43-44).  The side effects of the Plaquenil required plaintiff to have regular eye exams, to preventively detect crystal build-up.  (T. 44). Plaintiff also testified to having "really bad joints and everything . . . that comes with having lupus."  (T. 45).  Plaintiff previously treated for arthritis, however stopped seeing his rheumatologist in 2014 because of the commute, and his fear of passing out during a coughing fit.  (T. 49-50).  He did not feel comfortable driving more than 20 to 30 minutes at a time.  (T. 50).

Although some days plaintiff felt "fine," he testified that the frequency of his "bad days" would cause more absences from work than most jobs would permit.  (T. 46).  Specifically, plaintiff testified that his medical issues would cause him to miss "seven or eight" days of work a month.  (*Id.*).  On such days, plaintiff experienced achiness and painful joints.  (*Id.*).  He also experienced severe coughing fits.  (*Id.*). Nothing alleviated these issues except for rest and trying to "get through it."  (T. 46-47).  Plaintiff testified to having passed out two or three times a day from coughing in the past.  (T. 51).  His inhaler did not alleviate the cough, but it did address his "sore" lungs.  (*Id.*).

At home, plaintiff refrained from cleaning due to the chemical irritants; he further avoided housework that required lifting.  (T. 47).  He had a driver's license, and on rare occasion went to the store for his mother.  (*Id.*).  Plaintiff socialized with friends at his own home, in order to avoid unpredictable environmental triggers.  (T. 51-52).

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful

6

activity since July 10, 2013, the alleged onset date. (T. 12).  At step two, the ALJ found

the following severe impairments: asthma and recurrent bronchitis. (T. 13).  Plaintiff

also had various impairments that the ALJ found were "non-severe:" lupus,

gastroesophageal reflux disease, hypertension, hyperlipidemia, and sleep apnea. (*Id.*).

At step three of the sequential analysis, the ALJ found that none of plaintiff's severe

impairments, alone or in combination, met or equaled the severity of a Listed

Impairment.[3] (T. 13-14).

　　At step four, the ALJ found that plaintiff had the physical RFC to perform

medium work, except plaintiff should avoid concentrated[4] exposure to temperature

extremes, respiratory irritants, dust, fumes, and odors, working at unprotected heights

and around moving mechanical parts.  (T. 14).  The ALJ further found that plaintiff

should not operate a motor vehicle.  (*Id.*).   Next, the ALJ found that plaintiff had no

past relevant work.  At step five, using the Medical Vocational Guidelines as a

"framework," and various Social Security Rulings ("SSR"), the ALJ found that

plaintiff's non-exertional limitations did not "significantly erode the medium

occupational base."[5]  (T. 17).  Thus, the ALJ found that plaintiff was not disabled under

---

[3] Plaintiff does not argue otherwise.

[4] The ALJ's decision states "concentrate" instead of "concentrated," which this court
assumes to be a typographical error.  There is nothing in the parties' briefs indicating otherwise,
as both sides use the terms interchangeably in reference to an environmental factor (odor, dust,
etc.) which is present in high proportion.

[5] At step four, the ALJ found that plaintiff retained an RFC to perform medium work.
However, at step five the ALJ premised his analysis on various SSRs regarding the effect of non-
exertional limitations on the sedentary occupational base, to the extent that the ability to perform
medium work generally also suggests the ability to perform light and sedentary occupations.  (T.
16-17).

the framework of Medical-Vocational Rule 203.29 and SSRs 83-14 and 96-9p. (*Id.*).

## V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. The ALJ's request for and reliance upon a non-examining medical expert was improper. (Pl.'s Br. at 15-22)(Dkt. No. 11).

2. The ALJ failed to provide plaintiff with post-hearing medical evidence obtained from a non-examining medical expert. (*Id.* at 13).

3. The ALJ improperly relied upon the Medical Vocational Guidelines despite plaintiff's environmental and other non-exertional limitations. (*Id.* at 22-24).

4. The ALJ failed to provide a rationale for his consistency (credibility) finding. (*Id.* at 24-25).

Defendant argues that the Commissioner's decision is supported by substantial evidence and based upon the proper application of the correct legal standards, and therefore should be affirmed. (Def.'s Br. at 1-22) (Dkt. No. 16). For the following reasons, this court recommends remand based on the lack of substantial evidence supporting ALJ Ramos's RFC, which therefore tainted the ALJ's step five analysis and his ultimate conclusion that plaintiff was "not disabled."

## **DISCUSSION**

## VI. **RFC EVALUATION/STEP FIVE ANALYSIS**

### A. **Legal Standards**

#### 1. **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis…" A "regular

and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F. 2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. At 183; *Sullivan v. Secretary of HHS,* 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Step Five Analysis

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals

live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967.  Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21

(N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

###    B.    Application

Plaintiff's most compelling argument challenges whether the medical source statement ("MSS") of non-treating, non-examining expert Michael Falkove, M.D. constitutes substantial evidence supporting plaintiff's RFC.  The ALJ afforded "great weight" to the April 2017 MSS rendered by Dr. Falkove.[6] (T. 15).  Dr. Falkove concluded, among other things, that plaintiff could "never" tolerate exposure to dust, odors, fumes and pulmonary irritants.  (T. 655).  Plaintiff argues that these findings are at odds with the ALJ's conclusion that plaintiff need only avoid "concentrate[d]" exposure to . . . respiratory irritants, dust, fumes and odors."  The Commissioner defends the ALJ's reliance on Dr. Falkove's opinion, but fails to specifically address its inconsistency with the ALJ's ultimate conclusion regarding non-exertional limitations. (Def.'s Br. at 16-19). Instead, the Commissioner argues that a limitation only to avoid concentrated amounts of respiratory irritants does not significantly erode the occupational base.  (Def.'s Br. at 17).  The Commissioner's argument does not, however, reconcile the lack of substantial evidence supporting the ALJ's conclusion in

---

[6]Dr. Falkove's MSS is the only expert medical opinion contained in the administrative record, other than a March 7, 2017 correspondence from plaintiff's primary care physician, Ryan Tyler, M.D.  In his letter, Dr. Tyler opined that "since being familiar with [plaintiff], he has experienced non-productive coughing spells which sometimes cause syncope. [Plaintiff] has undergone testing and tried several medications, but has experienced no relief of the coughing or syncope spells . . . .  Until the coughing spells can be brought under control, thus resolving the syncope episodes he is unable to work." (T. 617).

the first place, as further discussed below.

An opinion one can "never" tolerate exposure to dust, odors, fumes and pulmonary irritants is contrary to a restriction to avoid "concentrated" exposure to the same elements. Although the term "concentrated exposure" is not defined in this matter, other courts in this Circuit have observed it to be the least restrictive limitation with respect to environmental factors. *See Bernier v. Saul*, No. 3:18-CV-1633, 2019 WL 5296846, at *8 & n. 5 (D. Conn. Oct. 18, 2019) (suggesting "'avoid concentrated exposure' is the least restrictive limitation with respect to environmental factors, with the next option being no restriction."); *see also Crudele v. Chater*, No. 92 Civ. 7912, 1997 WL 198076, at *3 (S.D.N.Y. Apr. 23, 1997) (acknowledging spectrum of environmental limitations to include "unlimited," "avoid concentrated exposure," "avoid even moderate exposure," and "avoid all exposure."). Thus, it is reasonable to conclude that an opinion finding that one can "never" tolerate respiratory irritants is the same as a need to "avoid all exposure."

As previously discussed, Dr. Falkove concluded that plaintiff could "never" tolerate exposure to respiratory irritants such as dust and odor. Despite the same, the ALJ concluded, without explanation, that plaintiff had an RFC to perform work in environments with some amount of exposure to such elements; a considerably less restrictive limitation. (T. 14). Arguably, some evidence may exist in support of the ALJ's less restrictive RFC. However, this Court may not "create post-hoc

rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Radicchi v. Colvin*, No. 3:14-CV-0296 (GTS), 2015 WL 3902193, at *6 (N.D.N.Y. June 25, 2015) (citing, inter alia, *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005)); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the court] properly affirm an administrative action on grounds different from those considered by the agency.") (citations omitted).

This court cannot reconcile the ALJ's failure to recognize and/or explain the obvious contradiction between the RFC and Dr. Falkove's opinion, to which the ALJ afforded "great weight." Moreover, the ALJ failed to identify any other evidence more credible than Dr. Falkove's opinion on this issue, that would otherwise have explained this inconsistency. On the contrary, the ALJ specifically concluded that Dr. Falkove "cited to specific evidence in the record that informs and supports his opinion." (T. 15).

In the course of rejecting, by implication, the only expert opinion of record regarding plaintiff's non-exertional limitations as to respiratory irritants, the ALJ impermissibly substituted his own judgment for competent medical opinion. *See Rosa*, 168 F. 3d at 79; *see also Amarante v. Commissioner of S.S.,* No. 16-CV-00717, 2017 WL 4326014, at *11 (S.D.N.Y. Sept. 8, 2017) (citing *Andino v. Bowen*, 665 F. Supp.

186, 191 (S.D.N.Y. 1987) ("[T]he Secretary may not 'substitute his or her own inferential judgment for a competent medical opinion, particularly where the ALJ's judgment assumes some degree of medical expertise and would amount to rendering an expert medical opinion which is based on competence he or she does not possess.'") (quotation and citation omitted), Report and Recommendation Adopted, 2017 WL 4326525 (S.D.N.Y. Sept. 26, 2017).  Accordingly, remand is warranted for further development of the record and clarification concerning the ALJ's assessment of plaintiff's non-exertional impairments.  *See Peterson v. Astrue,* 2 F. Supp. 3d 223 (N.D.N.Y. 2012) (remanding where ALJ afforded consultative examiner's opinion great weight but the opinion did not support the ALJ's RFC determination and the ALJ failed to recognize the contradiction and failed to note other evidence more credible than consultative examiner's opinion); *see also Pickering v. Commissioner of Social Security,* No. 8:17-CV-700 (GTS/WBC), 2018 WL 3520844, at *6 (N.D.N.Y. June 12, 2018), Report and Recommendation Adopted, 2018 WL 3520427 (N.D.N.Y. July 20, 2018).

The ALJ's step five analysis is therefore tainted, due to a lack of substantial evidence supporting the underlying RFC.  However, the ALJ also erroneously interpreted the various SSRs upon which he relied in concluding that plaintiff was "not disabled," warranting further discussion of his step five analysis. As previously noted, the ALJ based his step five analysis on the premise that plaintiff's non-exertional

14

limitations would not significantly erode the *sedentary* occupational base, despite previously finding that plaintiff had the RFC to perform *medium* work, with some non-exertional limitations. (T. 14, 16-17).  Under SSR 96-9p, when "[a]ny one of an individual's exertional capacities is determined to be less than that required to perform a full range of sedentary work[,]" "the medical-vocational rules must be used as a framework for considering the extent of any erosion of the sedentary occupational base."  1996 WL 374185, at *4.  When a Social Security claimant's limitations or restrictions have "more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country."  SSR 96-9p, 1996 WL 374185, at *5.  SSR 96-9p also calls for the use of a vocational expert ("VE") where the occupational base for a full range of sedentary work will be eroded.  *Id.* at *6-7.

Here, the ALJ concluded that "no vocational expert testimony is needed in this case because the Administration's Social Security Rulings provide sufficient guidance for determining whether there are a significant number of jobs in the national economy an individual such as the claimant could perform."  (T. 17).  The ALJ went on to state:

> [SSR 96-9p] provides that the need to avoid **all** exposure to extreme temperatures, wetness, humidity, vibrations, hazards, moving mechanical parts, working at heights, and other environmental restrictions would not significantly erode the

sedentary occupational base.  Similarly, [SSR] 83-14 provides
that the vast majority of sedentary occupations are performed
indoors and that environmental limitations would not
significantly erode the sedentary occupational base.

The [plaintiff's] need to avoid working at heights and around
moving mechanical parts and his need to avoid **concentrated**
exposure to respiratory irritants as outlined above, does not
significantly erode the medium occupational base, which
includes medium, light, and sedentary occupations.

(T. 17) (emphasis added).[7]

The ALJ's interpretation of SSRs 96-9 and 83-14 are out of context, and do not

accurately convey the administrative guidance intended by the SSA.  SSR 96-9p states,

in relevant part:

In general, few occupations in the unskilled sedentary
occupational base require work in environments with extreme
cold, extreme heat, wetness, humidity, vibration, or unusual
hazards. The "hazards" defined in the SCO are considered
unusual in unskilled sedentary work. They include: moving
mechanical parts of equipment, tools, or machinery; electrical
shock; working in high, exposed places; exposure to radiation;
working with explosives; and exposure to toxic, caustic
chemicals. Even a need to avoid all exposure ***to these
conditions*** would not, by itself, result in a significant erosion of
the occupational base.

[. . .]

Restrictions to avoid exposure to odors or dust ***must also be
evaluated on an individual basis.*** The RFC assessment must
specify which environments are restricted and state the extent
of the restriction; e.g., whether only excessive or even small

---

[7]Hence, the ALJ may have recognized that exposure to respiratory irritants would erode
the full range of medium work more than it would erode the full base of sedentary work.

16

amounts of dust must be avoided.

*See* SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO

OTHER WORK – IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY

FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 1996 WL 362208, at

*34483 (SSA July 2, 1996) (emphasis added).  Clearly, the SSA drew a distinction

between the former listed environmental conditions (from which even a complete

restriction would not significantly erode the sedentary occupational base), and the

need to avoid all exposure to odors and/or dust (elements to be evaluated on a case by

case basis).  By no means does this section imply that an extreme environmental

restriction could not significantly erode the occupational base.

Moreover, SSR 83-14 states in relevant part:

> 1. *Sedentary exertion combined with a nonexertional
> impairment.* Example 1 of section 201.00(h) in Appendix 2
> illustrates a limitation to unskilled sedentary work with an
> additional loss of bilateral manual dexterity that is significant
> and, thus, warrants a conclusion of "Disabled." (The bulk of
> unskilled sedentary jobs requires bilateral manual dexterity.)
> An example of nonexertional impairment which ordinarily has
> an insignificant effect on a person's ability to work is an allergy
> to ragweed pollen. Many individuals who have this allergy
> experience no more discomfort during the ragweed season than
> someone who has a common cold. However, others are more
> affected by the condition. Assuming that an individual has a
> severe impairment of the low back which limits that person to
> sedentary work, and that the assessment of RFC also restricts
> him or her from workplaces which involve exposure to
> ragweed pollen, the implications for adjustment to sedentary
> work are relatively clear. Ragweed grows outdoors and its

17

> pollen is carried in the air, but the overwhelming majority of
> sedentary jobs are performed indoors. Therefore, with the
> possible exclusion of some outdoor sedentary occupations
> which would require exposure to ragweed pollen, the unskilled
> sedentary occupational base is not significantly compromised.
> ***The decisionmaker may need the assistance of a [vocational
> specialist] in determining the significance of the remaining
> occupational base of unskilled sedentary work in more
> difficult cases.***

SSR 83-14, TITLES II AND XVI: CAPABILITY TO DO OTHER

WORK--THEMEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR

EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL

IMPAIRMENTS, 1983 WL 31254, at *4 (SSA 1983) (emphasis added). Although

true for the proposition that most sedentary occupations are performed indoors, the

limited hypothetical in SSR 83-14 does not lead to the blanket assertion that

"environmental limitations would not significantly erode the sedentary occupational

base," as the ALJ suggests.

Although not cited in the ALJ's decision, SSR 85-15 appears to provide the

most relevant guidance with respect to the facts herein. According to SSR 85-15:

> Where a person has a medical restriction to avoid excessive
> amounts of noise, dust, etc., the impact on the broad world of
> work would be minimal because most job environments do not
> involve great noise, amounts of dust, etc.

> Where an individual can tolerate very little noise, dust, etc., the
> impact on the ability to work would be considerable because
> very few job environments are entirely free of irritants,
> pollutants, and other potentially damaging conditions.

> Where the environmental restriction falls between very little
> and excessive, resolution of the issue will generally require
> consultation of occupational reference materials or the services
> of a [vocational specialist].

SSR 85-15,TITLES II AND XVI: CAPABILITY TO DO OTHER

WORK--THEMEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR

EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at

*8 (SSA 1985).  Contrary to the ALJ's analysis, the SSA clearly contemplates cases of

environmental limitations so severe as to have a "considerable" impact on an

individual's ability to work, eroding the occupational base to some degree.  Here, the

ALJ's failure to support his RFC with substantial evidence prevented an appropriate

application of SSR 85-15.  If the district court adopts this recommendation, on

remand, the ALJ should consider, among other things, SSR 85-15 and whether, based

on the RFC, the testimony of a vocational expert is necessary.  *See Quinto v. Berryhill*,

No. 3:17-CV-00024, 2017 WL 6017931, at *9–11 (D. Conn. Dec. 1, 2017)

(instructing the ALJ, on remand, to reconcile the conflicting medical opinions

regarding how much exposure to irritants the plaintiff could withstand, and provide

reasons that make clear that his determination is supported by substantial evidence in

the record).

## VII.  **DUE PROCESS VIOLATION**

Plaintiff additionally argues that the ALJ erred by failing to "proffer" Dr.

Falkove's expert medical opinion, obtained after the administrative hearing, to the plaintiff and/or plaintiff's representative. (Pl.'s Br. at 13-14). The Commissioner argues that the ALJ properly discharged his duties to the extent he sent both plaintiff and his representative an April 24, 2017 notice informing them that he had secured new evidence from Dr. Falkove, providing them with the means to view the new evidence, and apprising them of their right to request a supplemental hearing or otherwise respond to the evidence. (T. 217).

"As a part of procedural due process, a claimant has the right to cross-examine the author of expert opinions, particularly when the expert's evidence is obtained by the ALJ after the hearing." *Figueroa v. Saul*, No. 18-CV-4534, 2019 WL 4740619, at *31 (S.D.N.Y. Sept. 27, 2019) (citing *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984)). An ALJ's failure to proffer such evidence to a claimant constitutes a deprivation of his due process rights. *Id.* at 32. Here, the administrative record supports the Commissioner's contention that notice was adequately provided to plaintiff regarding the entry of post-hearing evidence into the record, and plaintiff's rights with respect to the same. (T. 217). Given that this court is already recommending remanding the case to the ALJ for reconsideration of the RFC determination and step five analysis, the additional issues raised by plaintiff are otherwise moot. Upon remand, plaintiff will be provided the opportunity to respond to Dr. Falkove's opinion, and any other expert opinion obtained by the ALJ in

contemplation of his disability determination.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED**, and this case be **REMANDED** for further proceedings consistent with the above Report and Recommendation, including a proper RFC determination and a proper step five determination, including obtaining the testimony of a vocational expert if appropriate, and it is

**RECOMMENDED**, that judgment be entered for the plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 21, 2019

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**